SMDC-CM-CN 18 Jul 02

MEMORANDUM FOR RECORD

SUBJECT: HELSTF Pressure Vessels

1. There is currently an acquisition problem on-going with action on the above subject. I am aware that The Edge has gone on risk at HELSTF for visual inspection of the vessels. I called COL Tronte to advise her there is a problem, the Edge is not "on" contract, and they should be advised to limit their risk.

2. Mr. Shane Bowen of The Edge called; I told him I was unable to explain the problem with award of the contract, it is an acquisition issue. Mr. Bowen was concerned, however, with a technical/safety issue in what they have seen to date. It seems the condition of the vessels and associated items (pressure valves, piping) are worse than anyone had suspected and could constitute a severe safety hazard.

3. I asked, without asking him to expend funds for which he may not be compensated, if he could provide a brief summary of his findings at HELSTF so that we could raise the flag outside the Contracting Office. Mr. Bowen advised he was already in the process of documenting some of the problems found, and agreed to e-mail to Ms. Denise Owens (I will be out of the office after COB today until 29 Jul 02.

4. I believe SMDC Safety Office would have expertise in this area and matters such as ASME standards, and strongly recommend their involvement in the HELSTF pressure vessel issue(s) as soon as possible.

Debra Parker

Debra Parker
Contracting Officer

**Parker, Debra A Ms USASMDC**

| | |
|---|---|
| **,om:** | Parker, Debra A Ms USASMDC |
| **Sent:** | Wednesday, August 07, 2002 4:48 PM |
| **To:** | 'Shane.Bowen@helstf.wsmr.army.mil' |
| **Cc:** | Sutton, William Mr HELSTF; Clawson, David Mr HELSTF; White, Kenneth Mr HELSTF |
| **Subject:** | HELSTF Pressure Vessels |

There is no contract in effect at SMDC for inspection/researching history of pressure vessels. Any work at HELSTF in anticipation of such contract should cease immediately.

Debra Parker
Contracting Officer
(256) 955-5706
Fax: -4240

THE EDGE

Research and Development

January 28, 2003 Transmittal # MSB001012803

To: Mr. Mark Lumer
PARC /Contracting & Acquisition
Space and Missile Defense Command
US Army Space & Missile Defense
Attention: SMDC CM (Mr. Mark Lumer)
106 Wynn Drive
Huntsville AL 35805-1957

Subject: Restitution on work that was preformed on Pressure Vessel Certification at HELSTF

Mr. Lumer,

The Edge Research and Development appreciates your efforts to resolve this issue. Attached are our cost claim and a copy of the Pressure Vessel Certification Project Review manual that was sent to SMDC. We commenced work based on an urgent safety request with an understanding that a contract was to follow. The SMDC contract is at attachment A of the manual. Notice that we signed and returned the contract to SMDC on 17 May. We have documented concise dates and times that were used throughout our entire process. Page 3 of the HELSTF Pressure Vessel manual provides specific dates on program actions. On the bottom of Page 4 and continuing to page 5 are the IPT minutes and our directions from Mr. Brooks, Mr. Smoot, and Dr White. Director of HELSTF had reclused herself on June 3, 2002 and had been cleared through SMDC Legal by an R. Hamilton.

The Edge was selected with sole source justification for its services for three reasons. First, it was in the best in interest of the government to initiate a task as soon as possible for health, safety liability purposes. Second we are the most qualified in this area already under contract with the other government agencies. Third the Edge R&D is a hub-zoned corporation, which fulfills certain government contracting obligations. Although HELSTF had an IPT before we began work, as you can see on page 8 of the manual HELSTF had some problems. We researched all former problems including the previous test, and HELSTF asked us to certify the test. We could not because of first, inconsistency in the data and second, the Acoustical Emissions test is not a stand-alone certifiable test. We explained that to HELSTF on numerous occasions.



5736 Trowbridge, El Paso, Texas 79925 * Phone (915) 778-5828 * Fax (915) 778-3603

THE EDGE

Research and Development

Although HELSTF attests to acoustical emissions being a test, tests must meet certain criteria in ASME (American Society of Mechanical Engineer). The test did not meet standards as shown on pages 6- 13 and references on section E and F in the back of the manual. This also has the complete criteria that ASME requires and states. Mr. Lumer, I know this looks like a novel, but it contains the facts.

We were informed that HELSTF had set aside $600,000 for commencement of this contract. Attached is the break down of the figure that The Edge is requesting. The amount of $240,559.20 compensates for time, materials, and cost of money. From our perspective, HELSFT has already implemented policies and procedures from our manual. As an example, they have now implemented job safety analyses that were not required prior to our efforts. Please contact me at any time to discuss this issue. Thank you once again for your time.

Appreciatively,

Michael Shane Bowen
Chief Operational Officer
The Edge Research and Development
5736 Trowbridge
El Paso, Texas 79925
Cell 915-892-4440
Office 915-778-5828
Fax 915-778-3603

Cc: Finney Brody, CoS, Rep Reyes

| Personnel | Rate per Hour | Overhead | Profit | Total Per Hour | Hours on Job | Total |
|---|---|---|---|---|---|---|
| Program Manager | $ 60.00 | 75% | 10% | $ 111.00 | 336 | $ 37,296.00 |
| Subject Matter Expert | $ 54.00 | 75% | 10% | $ 99.90 | 336 | $ 33,566.40 |
| QA/QC Inspector | $ 49.00 | 75% | 10% | $ 90.65 | 336 | $ 30,458.40 |
| Technical Writer | $ 32.00 | 75% | 10% | $ 59.20 | 336 | $ 19,891.20 |
| Safety manager | $ 30.00 | 75% | 10% | $ 55.50 | 336 | $ 18,648.00 |
| Technician | $ 24.00 | 75% | 10% | $ 44.40 | 336 | $ 14,918.40 |
| Technician | $ 24.00 | 75% | 10% | $ 44.40 | 336 | $ 14,918.40 |
| Technician | $ 24.00 | 75% | 10% | $ 44.40 | 336 | $ 14,918.40 |
| Technician | $ 24.00 | 75% | 10% | $ 44.40 | 336 | $ 14,918.40 |
| | | | | | | |
| Total On Labor (TOL) | | | | | | $ 199,533.60 |
| | | | | | | |
| Equipment | | | | | | |
| 15 ton crane | | | | $ 53.65 | 336 | $ 18,026.40 |
| Froklift 10000 lbs | | | | $ 27.75 | 336 | $ 9,324.00 |
| Air Compressor | | | | $ 22.20 | 336 | $ 7,459.20 |
| Tool and trailer | | | | $ 18.50 | 336 | $ 6,216.00 |
| | | | | | | |
| Total On Equipment (TOE) | | | | | | $ 41,025.60 |
| | | | | | | |
| Total | | | | | | $ 240,559.20 |

DEPARTMENT OF THE ARMY
U.S. ARMY SPACE AND MISSILE DEFENSE COMMAND
POST OFFICE BOX 1500
HUNTSVILLE, ALABAMA 35807-3801

REPLY TO
ATTENTION OF

March 17, 2003

Contract Operations Branch N

SUBJECT: Pressure Vessel Certification Restitution

Mr. Shane Bowen
The Edge Research and Development
5736 Trowbridge
El Paso, Texas 79925

Dear Mr. Bowen:

Reference your letter, January 28, 2003, subject: Restitution on work that was performed on Pressure Vessel Certification at HELSTF.

Please be advised that any compensation for services rendered without the benefit of a contract must be based on actual value received by the Government, rather than the costs expended in providing the services. In this case, it must be based on how HELSTF was benefited by your activities, not only a breakdown of your time, materials, and cost of money. For example, what actual benefit did HELSTF receive from information provided in the project review? Did it contain information not already available to HELSTF that was actually used in servicing or certifying the pressure vessels?

Based on a review of the "HELSTF Pressure Vessel Project Review," the HELSTF Director advised that the products and services provided by The Edge were of no value to the Government. According to the Director, that documentation consists only of a set of general recommendations which any reasonable and prudent engineer would make, a listing of the pressure vessels the Government has in inventory, and nameplate data for the vessels. He found that while The Edge may have conducted a visual inspection of the pressure vessels, the results of the inspection were not made available to the Government. According to him, even though The Edge had personnel in attendance at approximately four meetings of the HELSTF Pressure Vessel Integrated Product Team, he was unable to discover any valuable product the personnel provided as a result of their attendance. In short, he concluded the Government did not obtain a benefit from The Edge.

If you wish to provide anything further regarding this matter, please let me know.

Sincerely,

Debra Parker

Debra Parker
Contracting Officer

THE EDGE
Research and Development

5736 TROWBRIDGE
EL PASO TEXAS
**Office (915)778-5828**
**FAX (915)778-3603**

May 15, 2003

Ms. Debra Parker
Contracting Officer
Department of the Army
U.S. Army Space and Missile Defense Command
P.O. Box 1500
Huntsville, AL 35807-3801

RE: The Edge Research and Development
Contract No. DASG 60-02-C-0061
Pressure Vessel Certification Restitution

Dear Ms. Parker:

This letter and the attachments will further substantiate and quantify the claim of The Edge Research and Development (The Edge R&D) for restitution for services performed at the direction of the U.S. Army Space and Missile Defense Command (SMDC). The claim of the Edge is now $319,451 as set forth on Exhibit A, attached hereto and incorporated herein. The Certification is attached as Exhibit B and is incorporated herein. Because of some misstatements based upon information provided to you as set forth in your letter of March 17, 2003, it would be useful to review the facts leading up to this claim by the Edge.

Prior to the Edge's involvement, SMDC contracted with outside sources to provide certification and maintenance of pressure vessels at the White Sands Missile Range (WSMR), White Sands, New Mexico for the High Energy Laser Testing Facility (HELSTF). Pressure Vessel Certification (PVC) is crucial at this facility because of the use of such gases as nitrogen, argon, helium, nitrogen, tri-fluoride, deuterium and ethylene-helium used in active laser tests on the Mid-range Infrared Advanced Chemical Laser (MIRACL). The testing that was taking place on the various pressure vessels was not in compliance with the American Society of Mechanical Engineers (ASME) or Department of Transportation (DOT) procedures. Furthermore, certain of the firms providing the testing for HELSTF were located in the northeastern United States and for them to provide the necessary services was very expensive and costly to HELSTF and USMDC. See A Quality Services Laboratories Examination of Gas Filled Vessels Using Acoustic Emission February 19-22, 2002 (QSL Report) relating to 27 vessels.

The Edge is a participant in the Hub-Zone Empowerment Contracting Program implemented by the Small Business Administration. The Edge is certified as a qualified Hub-Zone small business concern and is the only entity in the WSMR area qualified to provide PVC services. It can do so at a cost less than what was being provided to HELSTF. Lieutenant

Colonel Lyn O. Tronti (LTC Tronti) Director, HELSTF, Space and Missile Defense Command, had the Edge look into the procedures being implemented with respect to PVC at HELSTF. On April 9, 2002, LTC Tronti provided a Statement of Work from the Edge for HELSTF and a Hub-Zone Certification to Mark Lumer of SMDC. LTC Tronti requested of Mr. Lumer that she be allowed to hire the Edge and have the Edge begin working as quickly as possible because of what LTC Tronti considered to be genuine safety concerns. Please note that the existing participants in the HELSTF PVC program had not informed SMDC that there were genuine safety problems, procedures implemented that were not in compliance with ASME or DOT, that there were consistent environmental violations and genuine safety concerns concerning the pressure vessels. Subsequently, Mr. Lumer assigned Debra Parker as the Contracting Officer for the PVC for HELSTF by the Edge.

Debra Parker submitted a Justification and Approval for Other than Full and Open Competition (The Justification) to LTC Tronti to be completed in order to utilize the Edge as a certified Hub Zone contractor.

On Friday, May 17, 2002, Debra Parker submitted to Shane Bowen of the Edge DASG 60-02-C-0061 (the Contract) for Phase I of the HELSTF pressure vessel re-certification. It called for inspection of existing conditions, documentation and testing. Phase II was to consist of repair, manufacture and re-rating of vessels. The scope was for 287 vessels; the number the Government thought existed at the time. Shane Bowen signed the same and returned it to Ms. Parker. Subsequently, SMDC Legal reviewed the Justification and suggested some proposed changes. While comments were being made on the Justification, the safety concerns continued. In late May, Mark Lumer, LTC Tronti and Shane Bowen participated in a conference call. LTC Tronti reiterated her safety concerns and requested permission to be able to have the Edge begin its work immediately. Mr. Lumer approved the Edge starting immediately and LTC Tronti directed Shane Bowen to proceed with the work. The next day, LTC Tronti confirmed this with Debra Parker who indicated that she would proceed as quickly as possible to finalize the Contract. Shane Bowen of the Edge began the preliminary work on the PVC during the week ending May 26, 2002.

LTC Tronti prepared a two week schedule for the Edge to set forth the work that needed to be done during the first two weeks beginning June 3, 2002. On June 11, 2002 LTC Tronti called a PVC meeting involving all program managers, Government staff and personnel relating to PVC. The Edge attended and made its initial presentation to all personnel involved. HELSTF, WSMR and SMDC all were aware that the Edge was proceeding with work based upon the directive from Mark Lumer and the representation from Debra Parker that the Contract would be forthcoming. On June 12, 2002 Debra Parker provided what she described as the final changes to the Justification to LTC Tronti.

On June 14, 1002, Brayton Smoot of HELSTF, following up on the July 11, 2002 meeting, provided the Edge with Pressure Vessel Certification Meeting Action Items containing a list of tasks for the Edge to perform.

By July 16, 2002 the Edge had prepared a draft of its Phase I Evaluation Report detailing its findings. Things then became extremely confusing. On July 18, 2002, Debra Parker notified LTC Tronti that Huntsville (HSV) legal and HSV contracting were holding the Justification but provided no reason for the hold. She notified LTC Tronti that the Edge needed to. . . minimize their risk at this time. Debra Parker then prepared a Memorandum for Record containing four numbered paragraphs. In this Memorandum for Record, she noted that there was a technical/safety issue brought to her attention by Mr. Bowen, which could constitute a severe safety hazard. Debra Parker asked if there could be a summary of the findings from the Edge, which he agreed to provide. Debra Parker also noted that an SMDC safety office employee familiar with ASME standards should be involved as soon as possible. The Edge subsequently provided its HELSTF PRESSURE VESSEL AND SUPPORT SYSTEMS Phase I Evaluation Report. It was reviewed and utilized by the Government.

Following the communication of the safety concerns to Debra Parker by Shane Bowen, and Ms. Parkers July 18, 2002 Debra Parker Memo for Record, Larry Brooks of HELSTF confronted Shane Bowen and accused him of circumventing the chain of communication and chastised him severely for communicating directly with SMDC. Mr. Brooks was upset because the flaws and safety concerns in the Program were being revealed to SMDC for the first time. Mr. Bowen responded directly to Mr. Brooks that his contract was with SMDC and that he was obligated to communicate such safety concerns. HELSTF then issued Technical Directive TE201 dated July 23, 2002. It directed the Edge to begin to address the previously tested 27 tanks (see QSL Report) and to prepare test procedures for the inspection of all pressure vessels. It recited the same dollar amount as in the Contract. Mr. Bowen pointed out to HELSTF that the dollar amount was inaccurate and that the Edge had no intention of certifying the 27 tanks because QSL had not used appropriate test procedures to test the tanks. HELSTF then issued Revision 1 to Technical Directive TE201 dated July 30, 2002. It revised the sequence of events to follow. Additionally, by this time, HELSTF and SMDC had learned, through the report prepared by the Edge, that there were actually 315 pressure vessels on site, not 287. The Edge continued its work pursuant to the Technical Directives even though it notified HELSTF that the dollar amount was inaccurate and it refused to sign the Technical Directive as long as it was inaccurate.

On Wednesday, August 7, 2002 Debra Parker notified Shane Bowen that there was no contract with the Edge from SMDC and that all work at HELSTF by the Edge should cease immediately. The Edge then was directed to turn in all of its badges, keys and was denied access to HELSTF. In spite of this inconsistent, unexplained and damaging activity by SMDC, the Edge provided the HELSTF Pressure Vessel Project Review dated August 19, 2002. This was reviewed by, utilized by and had recommendations implemented by HELSTF. HELSTF

subsequently, as a result of the work of the Edge, was subject to a safety stand down, which the Edge understands was in effect for approximately a year.

SMDC has never provided an adequate explanation to the Edge to justify its treatment or to explain exactly what happened. Naturally, there are a number of rumors concerning secret communications made by Northrup Grumman personnel and HELSTF personnel to SMDC and unsubstantiated rumors about the desire of such individuals to prevent the Edge from bringing to light all of the deficiencies that existed in the PVC program.

Following the Edges request to you for restitution, you provided a letter dated March 17, 2003. There is a critical point that needs to be clarified. As you know, as a result of the work of the Edge, gross deficiencies in the program being implemented by HELSTF were brought to light. It appears in your letter dated March 27, 2003, however, that in order to determine whether the Edge provided any value to HELSTF, you checked with the director of HELSTF who told you that the results of the Edges inspection were not made available to the Government and the Edge provided no value. Do you mean to say that the position of SMDC is that there was no value provided by the Edge because that is what the director of the deficient program says? Did you know that in fact the results of the investigation, at your request, were made available to the Government? Why was there a safety stand down for over a year as a result of the work of the Edge if the Edge provided no value to HELSTF? Why was there not a safety stand down in previous years if the situation relating to safety and environmental hazards was so dismal? If the documentation provided by the Edge was the same as any reasonable and prudent engineer would make, why didn't Northrup Grumman and HELSTF know that the had 315 vessels rather than 287? Why didn't HELSTF and Northrup Grumman catch the fact that QSL utilized test procedures that were not in compliance with ASME and DOT?

The Edge contends that Contract No. DASG 60-02-C-0061 in fact is a valid contract executed by Government personnel and the Edge. The Edge requests a decision from you whether the Contract was executed and is valid and what compensation is due to the Edge for the termination for convenience implemented by SMDC. The Edge requests a decision from the Contracting Officer as to whether the Technical Directive TE201 was a properly issued directive binding the Government and obligating it to pay for the work performed by the Edge pursuant thereto. It also requests a decision from you about whether that termination for convenience was implemented in bad faith. The Edge suggests that SMDC issue e-mails to all involved personnel directing them not to destroy any documents until discovery in this case is completed.

Because the Edge was directed to begin work by individuals with authority to make such a directive, the Edge requests a decision from you as to whether in fact it is entitled to compensation pursuant to the theory of contract in fact and/or quantum valebant. Finally, pursuant to Exhibit A, the Edge seeks compensation of $319,451. You will note that this exceeds the amount previously requested. In the previous request the Edge took the number of hours actually worked by its personnel and rounded them, which resulted in a lower number. This latest computation is based upon actual hours expended. The previous lower number was submitted in an effort to achieve a quick and equitable resolution but SMDC has decided not to choose that method of resolution.

The Edge requests decisions from you as described herein in your capacity as contracting officer and looks forward to the receipt of the same in writing within 60 days from the date of your receipt of this letter. Thank you in advance for your attention to this matter.

Sincerely,
THE EDGE RESEARCH AND DEVELOPMENT

Shane Bowen
Chief Operations Officer

/chm

| Personnel | Names | Rate per Hour | Overhead | Profit | Total Per Hour | Hours on Job | Total |
|---|---|---|---|---|---|---|---|
| Program Manager | Shane Bowen | $ 60.00 | 75% | 10% | $ 111.00 | 592 | $ 65,712.00 |
| Subject Matter Expert | Bob Bearden | $ 54.00 | 75% | 10% | $ 99.90 | 416 | $ 41,558.00 |
| QA/QC Inspector | Michael J Bowen | $ 49.00 | 75% | 10% | $ 90.65 | 504 | $ 45,687.00 |
| Technical Writer | Linda Willer | $ 32.00 | 75% | 10% | $ 59.20 | 464 | $ 27,468.00 |
| Safety manager | Melanie Preusser | $ 30.00 | 75% | 10% | $ 55.50 | 256 | $ 14,208.00 |
| Safety manager | H.L. Bolin | $ 24.00 | 75% | 10% | $ 55.50 | 248 | $ 13,640.00 |
| Technician | Loyld Fulkerson | $ 24.00 | 75% | 10% | $ 44.40 | 504 | $ 22,377.00 |
| Technician | Brian Newman | $ 24.00 | 75% | 10% | $ 44.40 | 504 | $ 22,377.00 |
| Technician | Bruce Seale | $ 24.00 | 75% | 10% | $ 44.40 | 504 | $ 22,377.00 |
| | | | | | | | |
| Total On Labor (TOL) | | | | | | | $ 275,404.00 |
| | | | | | | | |
| Equipment | | | | | | | |
| 15 ton crane | | | | | $ 53.65 | 178 | $ 9,549.00 |
| Froklift 10000 lbs | | | | | $ 27.75 | 504 | $ 13,986.00 |
| Air Compressor | | | | | $ 22.20 | 504 | $ 11,188.00 |
| Tool and trailer | | | | | $ 18.50 | 504 | $ 9,324.00 |
| | | | | | | | |
| Total On Equipment (TOE) | | | | | | | $ 44,047.00 |
| | | | | | | | |
| Total | | | | | | | $ 319,451.00 |
| | | | | | | | |
| | | | | | | | |
| **EXHIBIT A** | | | | | | | |

**CERTIFICATION**

STATE OF TEXAS )
)
COUNTY OF EL PASO )

BEFORE ME, the undersigned authority, on this day personally appeared Shane Bowen, who, having been duly sworn, testified under oath as follows:

AMy name is Shane Bowen. I am competent to give this Affidavit and the matters stated herein are true and correct and based upon my personal knowledge gained while serving as Chief Operations Officer for The Edge Research and Development.

I have reviewed the claim of The Edge Research and Development submitted to Ms. Debra Parker by letter dated May 14, 2003. The claim is made in good faith, the supporting data are accurate and complete to the best of my knowledge and belief, the amount requested accurately reflects the dollar amount for which The Edge Research and Development believes the Government is liable and I am duly authorized to certify the claim on behalf The Edge Research and Development.

"Further Affiant Sayeth Not."

SHANE BOWEN

SUBSCRIBED AND SWORN TO BEFORE ME the undersigned authority on this the 14th day of May, 2003.

NOTARY PUBLIC IN AND FOR THE STATE OF TEXAS

**EXHIBIT B**