IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE EDGE RESEARCH & DEVELOPMENT, INC., Plaintiff, | ) | No. 03-2843C |
| v. | ) | (Judge Baskir) |
| THE UNITED STATES OF AMERICA, Defendant. | ) | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF THE COURT OF FEDERAL CLAIMS:

COMES NOW THE EDGE RESEARCH & DEVELOPMENT, INC., Plaintiff in the above-entitled cause, and files this its First Amended Complaint and in support thereof shows the Court as follows:

## I. PARTIES

1. THE EDGE RESEARCH & DEVELOPMENT, INC. ('THE EDGE") is a Texas corporation with its principal place of business in El Paso, Texas.

2. Defendant is THE UNITED STATES OF AMERICA ACTING THROUGH THE DEPARTMENT OF THE ARMY U.S. ARMY SPACE AND MISSILE DEFENSE COMMAND ("SMDC"). It has been served and has entered an appearance herein.

## II. JURISDICTION

3. THE EDGE seeks to recover against the UNITED STATES for breach of an express and/or implied in fact and/or ratified contract with the UNITED STATES acting through the SMDC. Accordingly, this Honorable Court has jurisdiction pursuant to 28 U.S.C. §1491(a)(1) (Supp. 2003) and 41 U.S.C. §609(a)(1) (Supp. 2003).

## III. STATEMENT OF FACTS

4. SMDC operates a High Energy Laser Systems Test Facility ("HELSTF") which is located on the area commonly known as the White Sands Missile Range in Southern New Mexico. Tests are conducted on, among other things, the Mid- Infrared Advanced Chemical Laser ("MIRACL"). MIRACL operates with such gases as nitrogen, argon, fluorine, helium, nitrogen, tri-fluoride, deuterium and ethylene-helium. These gases are stored and then piped to MIRACL in pressure vessels and piping systems that must undergo pressure vessel testing and active, routine maintenance to insure their safety. In 1999, HELSTF formed a Pressure Vessel Certification Integrated Project Team ("PVC IPT") to address the issue. Its head was Larry Brooks, a civilian civil engineer working for HELSTF. It made little progress. As of the Spring of 2002, certification and maintenance of the pressure

vessels had been neglected since their installation and the PVC IPT had done little to rectify the problem.

5. THE EDGE is a participant in the Hub-Zone Empowerment Contracting Program implemented by the Small Business Administration. THE EDGE is the only entity certified as a qualified Hub-Zone small business concern in the White Sands Missile Range area qualified to provide pressure vessel testing services.

6. In the Spring of 2002, Lieutenant Colonel Lyn O. Tronti, the Director of HELSTF, learned that the testing and certification previously performed on the high pressure vessels was not done in compliance with the American Society of Mechanical Engineers (“ASME”) or the Department of Transportation (“DOT”) procedures. The Director provided THE EDGE with a statement of work and requested permission from SMDC to hire THE EDGE because of immediate safety concerns.

7. On Friday, May 17, 2002 Debra Parker, a Contracting Specialist with SMDC in Huntsville, Alabama, submitted to THE EDGE DASG 60-02-C-0061 (the “Contract”) for Phase I of the HELSTF Pressure Vessel Re-Certification. It called for inspection of existing conditions, documentation and testing. Phase II was to consist of repair, manufacture and re-rating of

vessels. The scope initially was for 287 vessels although this number increased in subsequent scope of work revisions. On May 17, 2002, the President of THE EDGE, Shane Bowen, executed the Contract and returned it to Debra Parker. Shane Bowen understood that the Contract would not be binding until SMDC approved it. In the third week of May of 2002, Lieutenant Colonel Lyn O. Tronti called Mark Lumer, the Contracting Executive and the Principal Assistant Responsible for Contract ("PARC") for SMDC. She repeated her safety concerns to Mark Lumer who then authorized Lieutenant Colonel Tronti to have THE EDGE proceed with work. As the PARC, Mr. Lumer had the authority to give the approval for THE EDGE to begin work. Lieutenant Colonel Tronti then directed THE EDGE to begin work and it did so. Lieutenant Colonel Tronti also organized a new PVC IPT with whom THE EDGE began to meet in early June of 2002.

8. In July, Dr. White, Deputy Director at HELSTF, asked THE EDGE to submit an interim report. On July 16, 2002 THE EDGE submitted a draft of its Phase I Evaluation Report which detailed its findings and specified the deficiencies in the certification and testing done previously. On July 18, 2002, Debra Parker prepared a Memorandum for the Record. She stated there was an acquisition problem and THE EDGE had gone "on risk" at HELSTF for

visual inspection of the vessels. She stated there was a technical/safety issue brought to her attention by Shane Bowen, she asked Shane Bowen to summarize his findings and she requested that the SMDC safety office be involved as soon as possible. On July 23, 2002 THE EDGE provided its HELSTF PRESSURE VESSEL AND SUPPORT SYSTEMS Phase One Evaluation Report which was reviewed and utilized by the government.

9. Representatives of the SMDC Safety Office from Huntsville, Alabama and of the SMDC Legal Department from Huntsville, Alabama attended the July 30, 2002 PVC IPT at HELSTF. At the meeting, the representatives listened to the warnings being given by THE EDGE about the safety risks posed by the pressure vessels and the pressure vessel systems. There were heated discussions and THE EDGE unequivocally notified SMDC Safety that there were grave risks being presented by the pressure vessels.

10. On Wednesday, August 7, 2002, Debra Parker notified Shane Bowen that all work at HELSTF being performed by THE EDGE should cease and she also stated that there was no contract between THE EDGE and SMDC. THE EDGE demobilized but continued work on a report of its findings. On August 8, 2002, there was a briefing given to Major General Urias, the Deputy Commanding General for SMDC, about environmental

problems at HELSTF. As a result, among other things, Major General Urias directed that there could be no testing of MIRACL unless such testing was cleared with him ahead of time. It was an effective shutdown of the laser testing until such time as environmental problems had been rectified. Major General Urias then removed Lieutenant Colonel Tronti as Director at HELSTF and replaced her with Tom Hodge. On August 19, 2002, THE EDGE submitted to SMDC the "HELSTF Pressure Vessel Project Review," detailing its findings, noting safety concerns, noting deficient inspections and certifications and making recommendations.

11. Mr. Hodge dismissed Larry Brooks as the head of the PVC IPT and replaced him with Brayton Smoot, a civilian mechanical engineer working for HELSTF. Over the next year, the PVC IPT was able to follow all of the suggestions made by THE EDGE, address the safety issues raised by THE EDGE and rectify the safety concerns expressed by THE EDGE. Mr. Hodge briefed Major General Urias on two occasions about the progress being made on the pressure vessels and pressure vessel systems and in June of 2003 Major General Urias cleared the MIRACL to resume testing.

12. THE EDGE billed SMDC $319,451. SMDC denied the existence of a contract and denied that THE EDGE provided benefit to the government.

THE EDGE then submitted its claim pursuant to the Contract Disputes Act. Upon further review, Debra Parker then concluded that THE EDGE's services provided benefit to Defendant and recommended payment to THE EDGE of $35,950. By letter dated July 24, 2003, Debra Parker offered to settle THE EDGE's claim for $35,950. By letter dated August 1, 2003, THE EDGE declined the offer and demanded $275,000 to settle its claims. By letter dated September 25, 2003 Denise L. Owens, the Branch Chief in the Contracting Office of SMDC, issued her final decision and without restriction paid $35,950 to THE EDGE for the benefit it provided to HELSTF but denied THE EDGE any additional compensation.

## IV. CAUSE OF ACTION

13. The actions of SMDC constitute a breach of an express or implied in fact contract between the UNITED STATES and THE EDGE. The actions of Defendant, including but not limited to, paying THE EDGE $35,950 without restriction, constitute a ratification of the Contract. The breach of contract by Defendant is the proximate cause of damages to THE EDGE in the amount of $283,501 ($319,451-$35,950). THE EDGE also seeks the recovery of its costs and reasonable and necessary attorneys fees pursuant to the Equal Access to Justice Act.

WHEREFORE, PREMISES CONSIDERED, THE EDGE requests that following a trial the Court enter judgment in favor of Plaintiff against Defendant and award Plaintiff its actual, incidental and consequential damages for breach of an express and/or implied in fact and/or ratified contract with the UNITED STATES, award Plaintiff its costs and reasonable and necessary attorneys fees, costs of court, prejudgment interest, post-judgment interest and such other relief in law or in equity, to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

**BECK & GIVEN, P.C.**
5915 Silver Springs Drive, Bldg. 4
El Paso, Texas 79912
915.544.5545
915.544.1620 Facsimile

By: /s/ ________________________
E. Link Beck
State Bar No. 02007400

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was forwarded to Steven M. Mager, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Attn: Classification Unit, 8th Floor, 1100 L Street NW, Washington, D.C. 20530 on this the 3rd day of January, 2005.

/s/ ________________________
E. Link Beck